# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Morsey Constructors, LLC | ) | Case No.: 24-50079 |
| | ) | Chapter 7 |
| Debtor | ) | |

| | | |
|---|---|---|
| Community Financial Services Bank, Inc. | ) | A.P. No. 25-5002 |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| Mark R. Little as Chapter 7 Trustee | ) | |
| | ) | |
| and | ) | |
| | ) | |
| United States Fire Insurance Company | ) | |
| | ) | |
| Defendants | ) | |

---

## MEMORANDUM-OPINION

### I.  Introduction

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.  The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Community Financial Services Bank, Inc. ("CFSB") filed this adversary complaint (the "Complaint") in the underlying bankruptcy case of Morsey Constructors, LLC (the "Debtor") against Mark R. Little as Chapter 7 Trustee (the Trustee") and the United States Fire Insurance Company, a Delaware corporation that provided Bond #612419178 for the above captioned Chapter 7 bankruptcy case.  CFSB contracted with the Trustee to collect the Debtor's accounts receivable.  Not satisfied with the Trustee's efforts, CFSB filed this action against the Trustee for his alleged inadequacies.  On count one ("Count One") of the Complaint,

CFSB alleges a Breach of Fiduciary Duty by the Trustee. Count two ("Count Two") alleges that the Trustee committed Negligence. In turn, the Trustee filed the Motion to Dismiss Plaintiff's Claim with Prejudice and Request for Fees (the "Motion to Dismiss") which is currently before the Court.

This Court has been asked to decide whether under Civil Rule of Procedure 12(b)(6), as incorporated into the Federal Rules of Bankruptcy Procedure by operation of Fed. R. Bankr. P. 7012, this case should be dismissed for failure to state upon which relief can be granted. For the reasons stated herein, the Court is contemporaneously entering an order granting the Trustee's Motion to Dismiss.

II.   **Factual Background**

On February 20, 2024, the Debtor commenced a voluntary case under Chapter 7 of the Bankruptcy Code. On February 21, 2024, Mark R. Little was appointed as Chapter 7 trustee to administer the Debtor's bankruptcy estate.

Before the Petition Date, the Debtor's business included acting as a mechanical contractor conducting installation and maintenance services. In order to fund its operations, the Debtor's operating company executed several Commercial Security Agreements (the "Security Agreements") with CFSB, secured by, among other things, a lien on the Debtor's accounts receivable. CFSB is the Debtor's largest creditor in the this Chapter 7 case, with a claim totaling some $3,805,200.72. In addition to other assets, including real property, the Debtor held accounts receivable totaling $3,826,445.31.

After his appointment in February 2024, the Trustee and CFSB began to negotiate an arrangement for the Trustee to collect the Debtor's accounts receivable. On September 20, 2024

(over 200 days after the filing of the bankruptcy case), the Trustee and CFSB entered into an agreement that the Trustee would collect the Debtor's accounts receivable. The arrangement provided that the Trustee would receive a 25% carve out for the estate of all funds recovered without litigation and a 40% carve out of funds recovered in the event of litigation (the "Agreement"). Other than email exchanges, the Agreement was not memorialized or otherwise reduced to writing.

As shown on the Court's docket, during the course of the bankruptcy, the Trustee was very engaged in the administration of this bankruptcy estate. For example, the Trustee filed at least six motions for the Debtor to turnover estate property and records including: (1) bank funds held in CrossFirst Bank in the amount of $495,024.73 [Bankruptcy Case, Docket No. 90]; (2) statements and images for accounts in Independence Bank [Bankruptcy Case, Docket No. 91]; statements and images for bank accounts in CFSB [Bankruptcy Case, Dockets No. 219, 282]; statements and images regarding transfers of money between accounts in CFSB [Bankruptcy Case, Docket No. 226]; and federal and state tax returns of the Debtor. [Bankruptcy Case, Docket No. 327.] Additionally, the Trustee also filed at least two motions to compel turnover. [Bankruptcy Case, Dockets No. 155, 157] and four motions to show cause to failure to turnover property to the Trustee. [Bankruptcy Case, Dockets No. 217, 218, 270, 326.]

In addition to these turnover efforts, the Trustee also successfully conducted two asset sales and collected at least $808,303.38 in sale proceeds. [Bankruptcy Case, Dockets Nos. 301, 323.]

In November of 2024, the Trustee informed CFSB he was working on collection of the accounts receivable. According to the Complaint, in late January 2025, in direct contradiction of the November comments, the Trustee informed CFSB that he had not mailed any demand letters

to collect the accounts receivable. Shortly thereafter, in February 2025, the Trustee agreed that CFSB could obtain stay relief to allow it to proceed with its own collection efforts.

On February 26, 2025, the parties filed a Stipulation and Joint Motion for An Agreed Order Granting Stay Relief, Abandonment, and Transfer of Debtor's Accounts Receivable And Related Documentation And Records (the "Stipulation"). [Docket No. 351.] Paragraph 15 of this agreed document provided that: "[A]s time goes by, the Morsey [accounts receivable] may be more difficult to collect." After noticing this agreed motion for objection, on March 13, 2025, the Court entered an order approving the Stipulation. [Docket No. 357] The Stipulation had the effect of divesting the Trustee of the control and responsibility of collecting the accounts receivable and returned control of that collection back to CFSB.

A few months later, CFSB sent out its own demand letters in an attempt to collect the accounts receivable. On or about April 21, 2025, 39 days after the Court approved the Stipulation, CFSB began sending demand letters and taking necessary steps to begin collection of the accounts receivable. As of the date of the Complaint, CFSB alleges that it has only received $552,610.94 in accounts receivable owed to the Debtor. CFSB alleges that as a result of the Trustee's failure to collect the accounts receivable during the period of the Agreement, the Debtor's obligations to CFSB are $3,273,844.37 in claims.

On July 18, 2005, CFSB filed this Complaint against the Defendants. As stated above, the Complaint contains two separate Counts. Count I accuses the Trustee of Breach of Fiduciary Duty. Count II of the Complaint alleges Negligence. CFSB seeks a monetary judgment and that it be allowed to collect such damages from the Trustee's bond in this bankruptcy case. The Trustee responded with the Motion to Dismiss.

On September 2, 2025, CFSB filed a Motion for Leave to Amend Complaint (the "Motion to Amend"). In the motion, CFSB seeks to add the United States as a nominal party for the use and benefit of CFSB as required under Fed. R. Bankr. P. 2010(b) and adds a count for proceeding on the Trustee's bond. The proposed amended complaint did not seek to add any additional factual allegations or causes of action against the Trustee. The Trustee opposed the Motion to Amend. The Motion to Amend is also under submission to the Court.

The Court held a hearing on the Motion to Dismiss and Motion to Amend on September 25, 2025. At that hearing, the Court inquired of counsel from CFSB if the Trustee's alleged delay in collecting the accounts receivable had caused those accounts to become time barred due to some statute of limitations. Counsel responded that he did not know if that was the case.

### III. The Motion to Dismiss

#### A. Immunity

In the Motion to Dismiss, the Trustee begins by making the argument that he has immunity against the claims asserted in the Complaint. The Trustee contends that within the Sixth Circuit, a trustee is only personally liable "for acts willfully and deliberately in violation of his fiduciary duties." The Trustee cites the *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 462 (6th Cir. 1982) case in support of this argument. *See also In re Heinsohn*, 231 B.R. 48, 65 n. 10 (Bankr. E.D. Tenn. 1999).

The Court disagrees with the Trustee. As the Sixth Circuit held in the *Weaver* case,

> A trustee in bankruptcy may be liable for violations of his fiduciary duties. A trustee in bankruptcy can be liable in his official capacity or individually. A bankruptcy trustee is liable in his official capacity for acts of negligence. *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951); *Sherr v. Winkler*, 552 F.2d 1367 (10th Cir.

> 1977) (Chapter X proceeding); *In re Johnson*, 518 F.2d 246 (10th Cir. 1977), *cert. denied, sub nom., Clark v. Johnson*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975) (Chapter XII proceeding); *United States v. Sapp*, 641 F.2d 182 (4th Cir. 1981). The applicable standard is the exercise of due care, diligence and skill both as to affirmative and negative duties. *In re Johnson*, 518 F.2d at 251. The measure of care, diligence and skill required of a trustee is that of "an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with a similar object in view." *Id.* Mistakes in judgment cannot be the basis of a trustee's liability in his official capacity. *Sherr v. Winkler*, 552 F.2d at 1375. The failure to meet the standard of care, however, subjects the trustee to liability in his official capacity. *In re Johnson*, 518 F.2d at 251. A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties. *Sherr v. Winkler*, 552 F.2d at 1375. Sapp, 641 F.2d at 182.
>
> *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461–62 (6th Cir. 1982).

As the *Weaver* case makes clear, a trustee in bankruptcy may be held liable either in his official capacity or individually. *Id.* The standards of care are different for each capacity. The Trustee contends that CFSB has not alleged gross negligence, nor has it pleaded that the Trustee acted willfully and deliberately. Consequently, the Trustee argues he may not be held personally liable. While both these statements are correct, CFSB has not sued the Trustee is his personal capacity. As the Complaint clearly states, and CFSB made clear in its response to the Motion to Dismiss, it is not pursuing the Trustee in his personal capacity. Rather, it is only pursuing the Trustee in his official capacity. As such the standard of care the Court must use is that of an ordinary prudent person.

### B. Fed.R.Civ.P 12(b)(6) Dismissal Standards

The Trustee seeks dismissal of this action for failure to state a claim upon which relief can be granted under Civil Rule 12(b)(6). The Supreme Court has provided instructions on the standard for reviewing motions to dismiss under Rule 12(b)(6). To "survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Although a complaint that is challenged by a 12(b)(6) motion to dismiss does not need detailed facts, a plaintiff is obligated to provide sufficient grounds of his entitlement to relief. *Twombly*, 550 U.S. at 555. Recitation of the elements of a cause of action by making conclusory statements are not sufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Rather, the issue is whether the claims have sufficient factual matter to make them plausible. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-556.

Thus, if the factual allegations are "well-pleaded" in the complaint, a court can assume their veracity and then decide whether the facts could support the requested relief. This is "context-specific, requiring the reviewing court to draw on its experience and common sense." *Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B. R. 147, 169 (Bankr. W.D. Tex. 2015) (*quoting Iqbal*, 556 U.S. at 663-64). This does not mean that the court must determine if a plaintiff will prevail on the merits, but rather whether a plaintiff is entitled to provide evidence in support of his claim. In other words, the court is to assess the legal feasibility of the complaint, not to weigh the evidence. The court can review and consider the complaint in its entirety, including any documents attached to the complaint, or incorporated into the complaint by reference, and matters which a court may take judicial notice.

**IV.     Elements of Count I: Breach of Fiduciary Duty**

"In the most general sense, a fiduciary duty is the duty to act with due regard for the interests of another. This means a fiduciary 'is bound to exercise good faith and due diligence' in its dealings." *Pagliara v. Johnston Barton Proctor and Rose, LLP*, 708 F.3d 813 (6th Cir. 2013). A claim for breach of fiduciary duty is stated when: (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) plaintiff suffered damages as a result of the breach. *Fastenal Co. v. Crawford*, 609 F.Supp.2d 650 (E.D. Ky. 2009) (*citing Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 n. 15 (Ky. Ct. App. 2000).

### A. Duty

Under Kentucky law, "a fiduciary relationship is 'founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking.'" *Sallee v. Fort Knox Nat'l Bank, N.A. (In re Sallee)*, 286 F.3d 878, 892 (6th Cir. 2002) (alteration in original) (*quoting Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991)).

In the Motion to Dismiss, the Trustee first argues that he owed no fiduciary duty to CFSB. The Court disagrees. The Trustee "owes a fiduciary duty both to the debtor and to the creditors as a group." *New Products Corp. v. Tibble (In re Modern Plastics Corp.)*, 577 B.R. 270, 278 (W.D. Mich. 2017) (*quoting Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 n.8 (2d Cir. 1993)). As a creditor of the Debtor, CFSB falls within this group.

A trustee, as a fiduciary, represents all creditors of the bankrupt debtor, secured and unsecured alike. *Weaver*, 680 F.2d 451, 462 n.8 (6th Cir. 1982). However, the Trustee "primarily represents the unsecured creditors, and represents the secured creditors only in his capacity as a

custodian of the property upon which they have a lien." *Second National Bank of Nazareth V. Marcincin (In re Nadler)*, 8 B.R. 330, 331 (Bankr. E.D. Penn.1980) *citing In re American Fidelity Corp.*, 28 F.Supp. 462 471 (S.D. Cal. 1939). Generally speaking, as a custodian, the Trustee's obligation to secured creditors is to preserve the assets as opposed to assuming the role of collection agent.

Under certain circumstances, this arrangement may change. For instance, as happened here, a trustee may agree to administer collateral for a secured creditor. Usually, this involves some sort of carve out for the Trustee. Under these circumstances, he owes that secured creditor a fiduciary duty of care. The precise contours of that duty are necessarily a matter of context.

Under the facts set out in the Complaint, taken as true for the purposes of this Motion to Dismiss, the Court has no difficulty finding that the Trustee owed a duty to all the creditors of this Debtor's bankruptcy estate. This duty existed in general from the Trustee's appointment and was heightened with respect to CFSB by the Agreement.

### B. Breach of Fiduciary Duty

The primary allegations related to breach of fiduciary duty are that the Trustee took no actions with respect to the accounts receivable for the period of time from September 20, 2024, the date of the Agreement, to February 26, 2025, the date of the Stipulation. This period of time is only 160 days. While the Trustee vigorously disputes this characterization, for the purposes of this Motion the Court will treat the allegation as true.

Even assuming the allegation as true, the Court cannot find that this constitutes a breach of fiduciary duty. This is even more true when there is no allegation that any alleged delay caused the accounts receivable to become legally uncollectible.

Although couched in a different way, the Complaint comes down to one key point: CFSB wanted the Trustee to treat their collections with higher priority than his other duties with respect to the bankruptcy estate. CFSB wanted the Trustee to prioritize collections of accounts receivable ahead of information collection, ahead of turnover from the debtor, and ahead of liquidation of the real property. To support its argument, CFSB points out the obvious that the passage of time impairs the ease of collection of accounts receivable. This axiom was expressly put forth in the Stipulation.

Were this the standard as CFSB suggests, it conceivably could have sued the Trustee a week after the Agreement was entered. Under this reasoning, any delay, no matter how short, would have impaired the collection of the accounts receivable. Short of the Trustee devoting all of his efforts <u>immediately</u> to collection of CFSB's collateral, CFSB could claim he breached his fiduciary duty. This is not the practice nor the law in bankruptcy. In this case, the Trustee was not required to give collection of CFSB's collateral the highest prioritization. To hold otherwise, would significantly impair a trustee's duty to collect and liquidate bankruptcy estate property. Every creditor could make a claim on a trustee's bond when they are not made whole through the bankruptcy.

Section 704(a)(1) provides that the trustee shall:

> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

11 U.S.C. § 704. Courts generally do not entertain objections to how a trustee manages a bankruptcy estate "where the trustee's conduct involves [his] good faith business judgment, is made on a reasonable basis, and is within the scope of the trustee's authority under the Code." *Fetman v. Musso*, Case No. 20-CV-1101, 2021 WL 746415, at *10 (E.D.N.Y. Feb. 25, 2021)

(internal quotation marks and citations omitted). By necessity, trustees must be given "a 'substantial degree of discretion' in determining how to administer an estate in any given case." *Id*. From the Court's own experience as a former Chapter 7 trustee, trustees must be given a wide latitude in exercising discretion about how to, and in what priority, bankruptcy estate assets are collected and liquidated.

Upon the filing of this case, the Trustee was responsible for the administration of all the Debtor's assets. CFSB, should it have chosen, could have obtained stay relief and began collection actions back in February 2024. Rather, it waited until September 2024 to hand this duty to the Trustee. Thus, these accounts receivable were already somewhat stale when the Agreement was made. Moreover, the 160 days the Trustee had with the accounts receivable are much shorter than the 213 days CFSB itself waited to act on these accounts receivable. The fact that the Trustee may have waited a short period of time to begin these efforts does not rise to the level of a breach of fiduciary duty. Had these accounts receivable become barred by a statute of limitations, perhaps CFSB would have a stronger argument.

In this case, as discussed above, the Trustee was extremely active. Numerous motions to compel, motions for turnover, applications to employ were filed during the pendency of the case. Significantly, two auction sales were conducted. No serious allegation can be made that the Trustee was sitting on his hands or failing to administer this bankrupt estate's assets.

Before the Agreement, the Trustee was under no obligation to pursue these accounts receivable. "[A]t no time does [the trustee] have a duty to manage assets, which have no value to the estate, for the benefit of secured creditors." *United States ex rel. The People's Banking Co. v. Derryberry (In re Peckinpaugh)*, 50 B.R. 865, 869 (Bankr. N.D. Ohio 1985); *see also In re Nadler*, 8 B.R. 330, 334 (Bankr. E.D. Pa 1980) ("[T]he trustee could not have been expected to expend

time which would not eventually or potentially have benefitted general creditors of the estate."). So, during the 160 days that the Trustee had between the Agreement and the Stipulation, CFSB had no right to force the Trustee to move quicker, nor can it now complain that he failed to act in that short period of time in question. As long as the Trustee was acting in the best interest of the bankruptcy estate, using his best business judgment, the Trustee has not breached his fiduciary duty. It bears repeating that CFSB chose to wait to deal with the Trustee and could have instead chosen to pursue this collateral shortly after the filing of the case.

As a secured creditor, CFSB had the means to protect its collateral that was not available to unsecured creditors of the estate. A secured creditor is entitled to "adequate protection" of the value of its collateral, and may obtain relief from the automatic stay in bankruptcy in order to obtain this protection. 11 U.S.C. § 362(d)(1). A secured creditor also has the right to request a condition on the use, sale, or lease of its collateral. 11 U.S.C. § 363(e). This protection "is designed to protect a secured creditor ... against any decrease in the value of its collateral which may result from depreciation, destruction, or the debtor's use of the collateral." *Volvo Commercial Fin. LLC the Am. v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 691–92 (6th Cir. BAP 2005). Until the Stipulation was filed in February 2025, a little over a year after the filing of the bankruptcy, CFSB never sought the protections available to it.

When pressed by the Court at the hearing on the Motion to Dismiss, counsel for CFSB had no response to the question why it waited itself so long to hand over these collection duties to the Trustee. Nor did CFSB have an answer why it waited so long (39 days) from the Stipulation to start its own collection letters. Finally, CFSB could point to no specific harm the alleged delay caused; *i.e.*, no statute of limitations issues.

Under these circumstances, assuming everything in the Complaint is true, CFSB has failed to plead a breach of fiduciary duty. Under the circumstances of this case, and using the Court's own experience and common sense as it is entitled to do, the Trustee's alleged inactions simply do not rise to that level as a matter of law. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940, 556 U.S. 663-664 (U.S., 2009) (*citing Twombly,* 550 U.S. at 556).

### C. Damages

The Court could stop here, but it will instead also address the third element needed to support a claim for breach of fiduciary duty: that the plaintiff suffered damages. Here, CFSB makes the statement that somehow the Trustee failure to pursue the collection of the accounts receivable in the short period of time between the Agreement and the Stipulation makes him responsible for all the accounts receivable. No explanation is provided at how the CFSB arrives at this calculation. Nor does CFSB indicate the age or collectability of the accounts receivable when the bankruptcy was filed. Nor does CFSB explain what percentage of the alleged damages should be allocated to its own delay in handing these accounts receivable to the Trustee or its own delay in waiting after the Stipulation to send its own letters. Surely, CFSB is not alleging that the Trustee would have been able to recover every single dollar owed to the Debtor.

Moreover, with respect to the amount of the alleged damages, CFSB does not account for any amount that might be recovered from the accounts receivable after the filing of the Complaint. Likewise, CFSB does not account for any recoveries it might have made or will make from collection against any of its other collateral. As confirmed by CFSB's counsel at the hearing on the Motion to Dismiss, collection efforts are on-going. On the face of the Complaint, it would be impossible for the Court to assign a dollar value to CFSB's alleged injuries.

The Court finds that CFSB has failed to state a claim with respect to its assertion of damages. Even assuming the facts pleaded in the Complaint are true, the bold statement that the Trustee is responsible for the full amount of the accounts receivable owed to the Debtor is not reasonable, not plausible, and not supported by the law.

### V.     Negligence

The Court now turns to the Count II, CFSB's allegation that the Trustee committed negligence. Under Kentucky law, a party must plead and prove the following elements of common law negligence: (i) a duty owed by the defendant to the plaintiff; (ii) breach of that duty; (iii) injury to plaintiff; and (iv) legal causation between the defendant's breach and the plaintiff's injury. *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012); *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003) (*citing Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992).

Like in the Breach of Fiduciary Duty Count discussed above, the Court has no difficulty finding that the Trustee owed a duty to all the creditors, including CFSB. For the same reasons discussed above, the Court cannot see how the Trustee's alleged delay in undertaking collection of the accounts receivable constitutes a breach of that duty. Bankruptcy trustees have wide latitude in how they administer a bankruptcy estate. The fact that the Trustee chose to prioritize other matters first does not constitute a breach of duty.

The Court also finds the Complaint deficient in that it fails to allege causation between the alleged breach and the damages. CFSB essentially argues the delay made the collection of the accounts receivable more difficult. More difficult does not equate to uncollectible.

Finally, with respect to the requirement of damages, as stated above, the Complaint fails on its face to show any correlation between the Trustee's alleged inactivity and the amount claimed as damages by CFSB. The Complaint fails on its face to show how such a damages calculation could be made, or how a court could even begin to make such a determination in light of other factors such as CFSB's own pre- and post Agreement delay.

## VI. Conclusion

This is essentially a case of hindsight. CFSB made the decision to do business with the Debtor. When the Debtor went bankrupt, CFSB eventually made the decision to assign the collection of the accounts receivable to the Trustee. After a relatively short period of alleged inactivity, CFSB decided it no longer wanted to use the Trustee as a collection agent. When its own collection attempts failed to bring a significant return, CFSB has now decided to try to hold the Trustee liable. Bankruptcy trustees are not responsible for bad business decisions by creditors. Trustees have a difficult job and are given wide latitude to perform that job. Circumstances may arise where they may be held responsible for actions or inactions, such as failure to insure property, abandoning valuable property of the estate, loss of assets, or failure to act within a statute of limitations. What happened in this case does not rise to that level. Under the facts in the Complaint, CFSB has failed to state a claim for either breach of fiduciary duty or negligence. The Court will enter an order granting the Trustee's Motion to Dismiss for failure to state a claim under Rule 12(b)(6). Because the Motion to Dismiss failed to provide any basis for the awarding of fees, the request for fees will be denied. Because the proposed amended complaint sought only to add the United States as a nominal plaintiff and did not allege any additional facts or causes of actions, the Motion to Amend will be denied. A separate Order consistent with this Memorandum Opinion will be entered this same date.

Alan C. Stout
United States Bankruptcy Judge
Dated: October 9, 2025

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Morsey Constructors, LLC | ) | Case No.: 24-50079 |
| | ) | Chapter 7 |
| Debtor | ) | |

| | | |
|---|---|---|
| Community Financial Services Bank, Inc. | ) | A.P. No. 25-5002 |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| Mark R. Little as Chapter 7 Trustee | ) | |
| | ) | |
| and | ) | |
| | ) | |
| United States Fire Insurance Company | ) | |
| | ) | |
| Defendants | ) | |

## **ORDER**

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the Motion to Dismiss Plaintiff's Claim with Prejudice is **GRANTED**. Because the Motion failed to provide any basis for the awarding of fees, the request for fees is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Leave to Amend Complaint is **DENIED**.

This is a final and appealable order and there is no just reason for delay.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: October 9, 2025